# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPHINE TORRES, on behalf of herself and all others similarly situated,<br><br>                                   Plaintiff,<br><br>       v.<br><br>KOHLBERG, KRAVIS, ROBERTS & CO L.P., a New York corporation, CONOPCO, INC., a New York corporation, and UPFIELD US INC., a Delaware corporation.<br><br>                                   Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Josephine Torres brings this action on behalf of herself and all others similarly situated against Defendants Kohlberg, Kravis, Roberts & Co L.P. ("KKR"), Conopco Inc. d/b/a Unilever ("Conopco") and Upfield US Inc. ("Upfield"). Plaintiff's allegations against Defendants are based upon information and belief and upon investigation of Plaintiff's counsel, except for allegations specifically pertaining to Plaintiff, which are based upon Plaintiff's personal knowledge.

## OVERVIEW

Defendants engage in false, unfair and deceptive practices in advertising, marketing, and selling I Can't Believe It's Not Butter! Spray ("ICBINB Spray" or the "Product"). They label, market and sell it as an alternative to butter with zero fat, trans fat, saturated fat, calories and cholesterol. Based on Defendants' marketing and advertising, consumers believe ICBINB Spray is a "diet" food – devoid of unwanted fats (including types of fats) and calories – that can assist consumers in managing their weight and contribute to a healthy diet. In truth, ICBINB Spray is an ordinary margarine spread with 1160 calories and 124 grams of fat per 12-ounce bottle.

As part of their scheme to deceive consumers, and in violation of FDA regulations, Defendants make these claims without having actually removed these nutrients from the product, they use unreasonably small serving sizes that do not reflect how the product is primarily intended to be used and *is* used by consumers and until recently they failed to inform consumers that the product is actually 44% vegetable oil on the front label. Defendants know that ICBINB Spray's labels suggest that the Product does not comprise a significant amount of fat and calories (if any) on a percentage basis. And yet they fail to inform consumers that ICBINB Spray is really an ordinary margarine spread with certain and appreciable amounts of fat (including types of fat) and calories. Consumers, who are increasingly health conscious and interested in calorie-free and fat-free food alternatives for themselves and their families, were and continue to be deceived by Defendants' practices.

## PARTIES

1.    Plaintiff Josephine Torres is, and was at all relevant times, an individual and resident of New York. Ms. Torres currently resides in Eastchester, New York. Plaintiff purchased and consumed ICBINB Spray in grocery stores in and around her home in Eastchester, New York during the Class Period for personal, family, and household purposes.  Plaintiff saw and read Defendants' representations that ICBINB is free of fat (including types of fat) and calories and relied on such misrepresentations in deciding to purchase ICBINB Spray.  Based on Defendants' representations, Ms. Torres believed that ICBINB Spray was a diet food that would help her manage her weight and would contribute to a healthier diet.  Plaintiff would not have purchased ICBINB Spray had Defendants disclosed the true nature of its product on its packaging and/or would not have paid a premium for ICBINB Spray.

2.    Defendant Kohlberg, Kravis, Roberts & Co L.P. ("KKR") purchased the ICBINB brand from Unilever United States, Inc. on or about July of 2018.[1]  KKR is an American global investment firm headquartered in New York, New York.   In a press release, KKR announced, "We look forward to deploying our global network and operational expertise to support the business's growth ambitions."[2]  Key to expanding that business through its subsidiaries, the New York-based private equity group has announced plans to highlight the health benefits of margarine including its low saturated fat content and non-diary component.[3]

3.    Defendant Conopco, Inc., d/b/a/ Unilever ("Conopco"), is a New York corporation with its principal office or place of business at 390 Park Avenue, New York, New York 10022. Conopco is an entity wholly owned by Unilever United States ("UNUS").  UNUS conducts its business in the United States principally through Conopco, which serves to market, sell and distribute its personal care and food products. Conopco marketed, sold and distributed I Can't

---

[1] https://www.sec.gov/Archives/edgar/data/110390/000119312518062363/d464496d20f.htm

[2] https://nypost.com/2017/12/15/henry-kravis-buys-8-billion-worth-of-margarine/ (last accessed October 16, 2019)

[3] https://www.food4brains.com/kkr-snaps-unilevers-spreads-business/

Believe It's Not Butter! Spray throughout the United States including the state of New York during the class period.  Any legal liability associated with the deceptive labeling of UNUS products arises out of Conopco's operations and are recorded on Conopco's financial statements.[4]

4.      Defendant Upfield U.S., Inc., formerly Unilever BCS US Inc., is a company organized in the United States, and headquartered in Hackensack, New Jersey.  During the class period, Upfield manufactured and sold I Can't Believe It's Not Butter! Spray throughout the United States including the state of New York.  Upon information and believe, Upfield continues to have business dealings with Conopco d/b/a Unilever relating to the distribution and sale of food products.

5.      At all times herein mentioned, Defendants and each of them, were members of, and engaged in a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

6.      At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

7.      At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as alleged herein.

## **JURISDICTION**

8.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiff and other putative Class members are citizens of a different state than one or more of the Defendants.

9.      This Court has personal jurisdiction over Plaintiff Josephine Torres because she resides within this District and submits to the Court's jurisdiction.

---

[4] https://www.unilever.com/Images/audited-financial-statements-of-unus-2018_tcm244-536840_1_en.pdf

10.     This Court has personal jurisdiction over the Defendant KKR because it is headquartered in New York, New York.

11.     This Court has personal jurisdiction over the Defendant Conopco because it is headquartered in New York, New York.

12.     This Court has personal jurisdiction over Defendant Upfield US Inc. because it conducts substantial business in this district and for a period of time maintained a sales office in New York, New York.

13.     Venue is proper in this Court because Defendants KKR and Conopco reside within this District and because a substantial part of the events omissions and acts giving rise to the claims herein occurred in this District.  Each Defendant distributed, advertised, and/or sold ICBINB Spray, which is the subject of the present complaint, in this District.

## FACTUAL ALLEGATIONS

### Defendants Market ICBINB as a Low Fat and Low Calorie Product That Can Assist Consumers Looking to Manage Their Weight and Maintain a Healthy Diet.

14.     I Can't Believe It's Not Butter! is the second largest margarine/spreads brand in the United States with annual retail sales in excess of $300 million dollars.  Defendants sell various versions of ICBINB, including versions packaged in plastic tub containers, "all-purpose sticks" that look like sticks of butter and ICBINB Spray, which is contained in pump-action squirt bottles.  While Defendants have sold ICBINB Spray in tub and stick form since 1981, ICBINB Spray was not brought to market until 1994.

15.     Defendants understand that consumers are concerned about their health and appearance, and therefore are willing to pay more for products with reduced fat, calories, trans fat, saturated fat and cholesterol. [5]

16.     To capitalize on these preferences, Defendants have marketed I Can't Believe It's Not Butter! products (including ICBINB Spray) as a nutritionally superior alternative to butter.

---

[5] http://www.unileverusa.com/brands/nutrition/diethealthandthefightagainst obesity/ (last accessed July 27, 2012).

For example, the ICBINB website explains that ICBINB Spray "gives you great butter taste at your fingertips with 0g fat, 0 calories and 0g trans fat.  It can be used for topping cooking and so much more.  Spray on great butter taste and make your favorite foods even more delicious!"[6] Similar advertisements have represented "Looking for more convenient ways to cook, and to manage calorie intake?  Then look no further with I Can't Believe It's Not Butter! Spray."[7]

17.     Defendants' marketing campaigns specifically target consumers who are interested in healthy products that can help them to manage their weight and maintain a healthier diet.  For instance, campaigns have featured svelte celebrity Kim Cattrall promoting ICBINB as a "diet" product that has helped her achieve her enviable figure.  Ms. Cattrall explained, "I've been on a diet since 1976 because I love to eat"[8] and "we're showing women they can have it all – delicious taste, with fewer calories and less fat than butter."[9]

18.     Other campaigns have featured romance novel icon Fabio Lanzoni.  In the 1990s, Fabio and the "Love" campaign introduced I Can't Believe It's Not Butter! Spray to the market and ushered in a new product category, the spray diet margarine, for American consumers.[10] Through his enviable physique, Fabio positioned ICBINB Spray as having the same great buttery taste the brand was known for but without the cholesterol, fat and calories.  Recently, Fabio returned as a spokesman for the brand. Unilever summarized its strategy, "You should just be able to get up, relax, have a piece of toast with I Can't Believe It's Not Butter on it and have that ability to enjoy pleasure and not feel guilty about it." [11]

---

[6] www.icantbelieveitsnotbutter.com/product/detail/129811/i-can-t-believe-it-s-not-butter-original-butter-spray

[7] http:www.tasteyoulove.com/products.asp?section=products/spray

[8] https://www.shape.com/celebrities/satc-star-kim-cattrall-her-sexy-new-ad-campaign-love-food-and-more (last accessed October 7, 2019)

[9] https://www.prnewswire.com/news-releases/uncompromising-actress-kim-cattrall-shows-women-they-can-have-it-all-with-i-cant-believe-its-not-butter-spread-in-the-brands-newest-campaign-114651389.html (last accessed Oct. 7, 2019)

[10] http://www.bambepr.com/case-studies/i-cant-believe-its-not-butter/

[11] https://www.adweek.com/brand-marketing/fabio-plays-epic-toaster-new-i-cant-believe-its-not-butter-ad-172538/



**Figure 2**

19.     Defendants' campaigns have even featured Sprachel, a female cartoon with Barbie-like proportions. Sprachel appeared on the bottle of ICBINB Spray itself.  With a flip of her hand, Sprachel directs consumers to "0 calories" and "No Trans Fat" claims prominently displayed on the front label.





**Figure 1**

20.     Defendants also used Sprachel in online video promotions.  These videos which parodied the popular TV show "Sex and the city" and soap opera "Days of Our Lives" promoted ICBINB Spray as a topping for vegetables and included tag lines like "every veggie wants a spray."

See also Fig. 3 (depicting Sprachel in a crowd of vegetables).



**Figure 3**

21.     More recently, Defendants engaged celebrity Eva Longoria ("The Longoria Campaign").  Launched in January of 2019 shortly after the New Year, the Longoria Campaign was designed to resonate with health-conscious consumers who were setting New Year's resolutions and looking to eat healthier.[12]  As with previous campaigns, the Longoria Campaign highlights the buttery spread's health properties and presents ICBINB as a healthier alternative to butter.  The Longoria Campaign has (or is expected to) to roll out across various digital channels, print, in-store, radio, social media and web media.[13]

22.     By teaming up with Longoria who has more than 6 million Instagram followers, Defendants have extended their reach, raised brand awareness and driven sales.  Part and parcel of this strategy, is Defendant's investment in an influencer management company[14] and its use of paid lifestyle and food influencers who have promoted ICBINB Spray as a buttery flavored topping

---

[12] https://www.marketingdive.com/news/i-cant-believe-its-not-butter-teams-with-eva-longoria-for-short-form-come/545164/

[13] https://www.marketingdive.com/news/i-cant-believe-its-not-butter-teams-with-eva-longoria-for-short-form-come/545164/

[14] https://www.wsj.com/articles/unilever-invests-in-influencer-management-company-creatoriq-11560274973

online.[15]  Defendants know that influencers are perceived as more trustworthy, engaging and authentic.[16]  In a short period of time, they have vastly transformed the online dialogue with respect to ICBINB Spray in an attempt to hide it's true nutritional content and bury online expressions of consumer deception.

**Defendants Market ICBINB Spray as a Zero Fat and Zero Calorie Substitute for**
**Butter That Can Be Used as a Butter-Flavored Topping.**

23.     I Can't Believe It's Not butter! Spray, is a butter-flavored vegetable oil spread that is dispensed in a pump-action squirt bottle.  It smells, looks and tastes like butter.  It is thick, yellow and viscous like butter and margarine.  Like butter, it must also be refrigerated.

24.     As with other ICBINB products, Defendants largely promote ICBINB Spray primarily as a substitute for butter, to be used interchangeably with butter (albeit without the fats and calories).  The name of the product itself – "I Can't Believe It's Not Butter" – suggests to the consumer that the product is intended to be a better-for-you substitute for butter generally and can be used interchangeably with other products in I Can't Believe It's Not Butter! line.

25.     Since its launch and continuing through the class period, Defendants have used imagery to words to inspire consumers to replace their butter and margarine with a substitute that is purportedly free of fat, calories, saturated fat and cholesterol, while still getting the taste of butter.  For example, on some packages, Defendants claimed that ICBINB spray has "Delicious Butter Taste" and on others, they stated "America's Favorite Buttery Spray" or "Spray on Delicious Butter Taste!"  An older version of the product's label even depicts ICBINB Spray being used as a topping for corn on the cob – a role traditionally reserved for butter.  *See* Fig. 2.

---

[15] https://www.marketingdive.com/news/i-cant-believe-its-not-butter-teams-with-eva-longoria-for-short-form-come/545164/

[16] https://www.marketingdive.com/news/i-cant-believe-its-not-butter-teams-with-eva-longoria-for-short-form-come/545164/

26.     Defendants have also consistently advertised that ICBINB Spray can be used for "topping" and "cooking" – like butter.  To that end, the product's website states, "Perfect for popcorn or adding buttery flavor to any of your favorite foods."  It even features various recipes that instruct consumers to use ICBINB Spray in place of butter on grilled vegetables, as a topping for popcorn and as a spread for muffins and toasted bread.  Until recently, the bottle itself declared "Great for Topping and Cooking."  *See e.g.*, Fig. 4.



**Figure 4**

27.     The industry itself sees ICBINB Spray as a direct competitor to butter. It appears next to butter in the refrigerated section of grocery stores (not next to cooking sprays like Pam and other dry goods) and competes with butter for shelf space.

28.     Marketing consultants recommend that I Can't Believe It's Not Butter! Spray be cross-merchandised as an accompaniment to fresh corn.[17]  And it is, in fact, cross-promoted as an accompaniment to corn by the Defendants and retailers through in-store displays and couponing. *See e.g.*, Fig. 5.

---

[17] https://www.producebusiness.com/sweet-corn-a-year-round-merchandising-warrior/

 

**Figure 5**

29.     While Defendants' advertisements overwhelmingly emphasize that ICBINB Spray is a buttery flavored topping that can be used to impart flavor to popcorn, vegetables and toast, Defendants have rarely (if ever) promoted ICBINB Spray as a cooking spray.

30.     In contrast to ICBINB Spray's advertisements, which portray ICBINB as a butter-flavored topping, advertisements for PAM, the most recognizable cooking spray on the market, feature the product's "non-stick performance," "No sticking" and "Superior no Stick."



**Figure 6**

31.     Defendant' advertisements do not tout ICBINB Spray's ability to lubricate because while ICBINB Spray can be used for "cooking" like butter, but in quantities far greater than the labeled serving sizes (e.g., to sauté vegetables), the Product does not (and cannot) function as a

cooking spray like Pam for which a 0.2g serving will effectively lubricate cookware.  This is because, unlike Pam which is 100% oil with added propellant allowing for a small amount of product to be dispersed over a large surface area to lubricate cookware, ICBINB Spray is 40% oil emulsified in water and dispensed through a pump-action squirt bottle.

32.     Defendants acknowledge that ICBINB Spray is not an appropriate choice for nonstick coating on ICBINB Spray's website.  Several recipes have instructed consumers to use ICBINB Spray as a topping in conjunction with PAM (made by competitor ConAgra Foods) to provide a nonstick coating.

33.     As a butter-substitute, ICBINB Spray purports to be free of fat, saturated fat, total fat, trans fat, cholesterol and calories.

34.     Since the launch of the product, ICBINB Spray's nutritional panel has read: "Calories 0" and "Total Fat 0g."  The nutritional panel has also stated "Sat Fat 0" "Trans Fat 0" and "cholesterol 0."  Examples of the nutritional panel include:





**Figure 7**

35.     For years and until the mid-2018s, Defendants listed nutritional information for two different "serving sizes": (1) one spray, or .02 grams, for "Cooking Spray" and (2) five sprays or 1 gram, for "topping" in the nutritional panel.  More recently and while still promoting ICBINB Spray as a butter-substitute and topping, Defendants removed the serving size for "topping."

36.     Since the launch of the product ICBINB Spray's front label has similarly stated "0 calories" and "0g Trans Fat."  Examples of the front panel include.



**Figure 8**

37.     Driving home Defendant's message that ICBINB Spray is a diet food – free of fats (including sources of fat) and calories that may cause weight gain and contribute to an unhealthy diet,  the number "0" has appeared on the label for ICBINB Spray as much as 23 times.

38.     Defendants redid the website for ICBINB in 2019. Like its labels and advertisements and under the heading "Unbelievable Benefits," it states "0g fat per serving," "0

calories per serving," "0g trans fat per serving."[18] The website also continues to advertise that "I Can't Believe It's Not Butter! Spray contains 0g fat, 0g trans fat and 0 calories per 5 sprays."[19]

39.     At all times during the class period, ICBINB Spray has contained 124 grams of fat and 1160 calories per 12-ounce bottle, including 13 grams of saturated fat.

**Consumers Primarily Use ICBINB Spray as a**

**Butter-Substitute Topping In Excess of One Spray.**

40.     Consumers primarily use ICBINB Spray as a butter-substitute "topping" – a use that Defendants' own label and advertisements depicts and encourages.  *See e.g.*, Figs. 4 & 5 (depicting ICBINB Spray as a topping for corn on the cob).

41.     Because IBINB Spray is primarily used to impart buttery flavor, its consumption is driven by taste (not the ability to lubricate) and consumers use an amount sufficient to cover the surface of food with buttery flavor.

42.     As a topping and by necessity, consumers necessarily use more than the 1 spray serving size designed for cooking sprays.   Some avoid the spray mechanism altogether.   A contributor to the website myfitnesspal.com writes, "A while back, I thought I had discovered a gold mine! I Can't Believe it's not butter spray! For a butter substitute! 0 calories, yada, yada. But after a bit, I began unscrewing the cap and pouring it on my potato, my oatmeal etc."[20]

43.     Defendants' representations as to ICBINB Spray are designed to trick consumers into believing that ICBINB Spray is a "skinny" butter-substitute that can help them manage their weight and eliminate unwanted fat (including types of fat) from their diet.

44.     As described herein, Defendants' representations are false and misleading because:

      i.     ICBINB Spray is not a diet food or nutritionally superior to other margarine spreads.   It is an ordinary margarine spread with significant amounts of fat

---

[18] https://www.icantbelieveitsnotbutter.com/products/original-butter-spray/

[19] https://www.icantbelieveitsnotbutter.com/products/original-butter-spray/

[20] https://community.myfitnesspal.com/en/discussion/217304/i-cant-believe-its-not-butter-spray-i-think-its-bad-fo (last access October 16, 2019).

(including types of fat) and calories;

ii.    ICBINB Spray is not a margarine spread for which fat and calories have actually been removed;

iii.    Defendants' labels falsely suggest that ICBINB Spray is inherently free of fat and calories – not simply free of fat and calories by virtue of an unrealistically small serving size; and

iv.    ICBINB Spray is not 0 fat and 0 calories per serving in its promoted and actual use as a butter-substitute and topping.

### Defendants' Label Claims Violate FDA Regulations

45.    While Defendants' off-label promotions are not regulated by the Food & Drug Administration, its labels are.

46.    In addition to being deceptive and misleading, Defendants' labels violate FDA regulations because:

i.    Defendants did not specifically process, alter, formulate, or reformulate the product in order to remove the fat or calories from ICBINB Spray in violation of 21 C.F.R. §101.13(e)(1);

ii.    Defendants falsely represented that ICBINB Spray is nutritionally superior to butter and margarine by virtue of it being free of fat and calories in violation of 21 C.F.R. §1.21;

iii.    ICBINB Spray is not factually or legally 0 fat and 0 calories in its promoted use as a butter-substitute topping in violation of 21 C.F.R. §§101.9; 101.12(a)(7); 101.12(d); 101.13(d); 101.13(i)(1); and 101.12(h);

iv.    Defendants failed to tell consumers that ICBINB Spray is not a zero calories or zero fat food in violation of 21 C.F.R. 101.13(i)(2); and

v.    Defendant failed to tell consumers conspicuously on the front label that ICBINB is actually 40% vegetable oil in violation of 21 C.F.R. §§101.13(f), 101.3(d) and 102.5(a).

47.     Defendants' labels may violate additional regulations as may be learned through discovery.

**Defendants' Labels Falsely Represent That ICBINB Spray is Nutritionally Superior to Butter and Margarine by Virtue of it Being Free of Fat and Calories and in Violation of Federal Regulations.**

48.     The Food Drug and Cosmetic Act ("FDCA") regulate the proper labeling of food. 21 U.S.C. §§ 301 *et seq*. It also vests the Food and Drug Administration ("FDA") with the authority to "protect the public health by ensuring that foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).

49.     Pursuant to this authority, the FDA has promulgated a comprehensive set of regulations pertaining to labeling requirements. 21 C.F.R. §101.1 *et seq*.

50.     This includes regulations restricting claims made outside of the nutritional panel otherwise known as "nutrient content claims." 21 C.F.R. §101.13.

51.     Because the use of a "free" claim implies that it differs from other foods of the same type of virtue of its having a lower amount of the nutrient, only foods that have been specially processed, altered, formulated or reformulated as to remove the nutrient from the food may bear such a claim. 21 C.F.R. §101.13(e)(1).

52.     ICBINBS is not an altered food for which fat and calories have been removed. It is an ordinary margarine spread with substantial amounts of fat and calories that was not permitted to make "free" claims outside of the nutritional panel.

53.     Defendants' labels create a false impression that ICBINB Spray is nutritionally superior to the butter and margarine it is intended to replace by virtue of it having no fat and calories and were prohibited by law.

**Defendants' Labels Fail to Reveal Material Facts in Violation of Federal Regulations.**

54.     Under 21 C.F.R. § 1.21, labeling is deemed misleading "if it fails to reveal facts that are...[m]aterial in light of other representations made or suggested by statement, word, design, device or any combination thereof." 21 C.F.R. § 1.21.

55.     Defendants' labels falsely suggest that ICBINB Spray is nutritionally superior to butter and margarine by virtue of it being free of fat (including types of fat) and calories.

56.     Defendants' labels falsely represent that ICBINB Spray is intended to and can be used in place of butter as a topping for foods but without the fat (including types of fat) and calories.

57.     By including two different serving sizes and declaring 0-fat and 0-calories for each, Defendants' labels falsely represent that consumers may increase their consumption without ingesting unwanted fats (including types of fat) and calories.

58.     Defendants' labels represent that ICBINB Spray is "not a significant source of fats and calories" when in fact the product comprises "40 percent fat" and contains a significant amount of fat and calories on a percentage basis.

59.     Defendants' labels suggest that the product is inherently free of fat and calories – not simply free of fat and calories by virtue of an unrealistically small, 0.2 g, serving size.

60.     In light of these false representations, ICBINB Spray was required to disclose that: (1) ICBINB Spray is an ordinary margarine spread that is nutritionally comparable to other margarines; (2) using ICBINB Spray as a topping to impart flavor will contribute a meaningful amount of fat and calories to the diet; (3) consumption beyond the stated serving size of one spray will contribute a meaningful amount of fat and calories to the diet; (4) ICBINB Spray is not an inherently fat-free or calorie-free product; and (5) ICBINB Spray comprises a significant amount of fat and calories on a percentage basis.

**Defendants' Serving Size Representations Violate FDA Regulations**

61.     FDA regulations also require a manufacturer to disclose the total number of calories and fat per serving on the labeling of a food product. 21 C.F.R. §101.9(c).

62.     21 U.S.C. §343(q) governs the disclosure of nutrition information on a product label. It deems a food misbranded unless its label or labeling discloses the total number of calories per serving and the amount of fat per serving. *See also* 21 C.F.R. §101.9(c)(1-2)

63.     Manufacturers are not permitted to select a serving size at random.  Rather, the

FDA has detailed regulations about how they must be chosen.  In particular, the FDA has prescribed serving sizes for 131 product categories "to assure that nutrition labels on similar types of foods are consistent, so that consumers will be able to easily and readily make comparisons of nutrient content among products.  In addition, the FDA expects that standard serving sizes will eliminate some of the problems that occur when manufacturers manipulate serving sizes to make a product appear, for example, lower in calories than it would if a more objective serving size were used."  55 F.R. 29517.

64.      The FDA's 131 product categories are set forth at 21 C.F.R. §101.12, Table 2.  For each product category, the FDA has designated a "reference amount" or standardized serving size that manufacturers must use.

65.      The reference amount must reflect a product's major intended use.  21 C.F.R. §101.12(a)(7) and is by definition the amount of food "customarily consumed" per eating occasion "based on consumption data under actual conditions of use."  21 C.F.R. §101.9(b)(1).  The regulations further state that substitute products, such as a "low calorie" version, have to use the same serving size **as the food for which it is offered as a substitute."**  21 C.F.R. §101.12(d). Substitute products are those that "may be used interchangeably with another food that it resembles."  21 C.F.R. §101.13(d).

66.      If none of the reference categories are appropriate to a given product (as with a product newly brought to market), a manufacturer must petition the FDA to establish a new product category with evidence of customary consumption to support the new categorization.  21 C.F.R. §101.12(h); 55 F.R. 2273.

67.      ICBINB Spray lists serving sizes for "topping" and "cooking spray" applications. Both serving sizes are unlawful because they do not comply with FDA regulations.

**Because Defendants Promoted ICBINB Spray as a Butter-Substitute Topping,**

**They Were Required to Use a 1 Tablespoon Serving Size**

68.     The relevant section of the Serving Size Table is below:

**Table 1**

| Fats and Oils: | | |
|---|---|---|
| Butter, margarine, oil, shortening | 1 tbsp | 1 tbsp (_g); 1 tbsp (15 mL) |
| Butter replacement, powder | 2 g | _tsp(s) (_g) |
| Dressings for salads | 30 g | _tbsp (_g); _tbsp (_mL) |
| Mayonnaise, sandwich spreads, mayonnaise-type dressings | 15 g | _tbsp (_g) |
| Spray types | 0.25 g | About _seconds spray (_g) |

69.     As the table illustrates, there are various subcategories within the "Fats and Oils" reference category, including the default, "Butter, margarine, oil and shortening." Manufacturers must use the defaulted serving size of one tablespoon for any "Fat and Oil" unless the product fits within a more specific subcategory.

70.     As the FDA has explained, "Butter, margarine, oil, shortening" includes "All types of butter and margarine (regular, **diet, liquid**, and whipped); spreads; oils; and shortenings." *See* https://www.fda.gov/ICECI/Inspections/InspectionGuides/ucm114704.htm#ATTACHMENT_26 (last accessed September 30, 2018) (emphasis added).

71.     "Spray types" are defined as "Nonstick cooking sprays (e.g., Pam)." *Id.*

72.     As alleged, ICBINB Spray is primarily intended to be used as a butter substitute for topping. *See* ¶¶ 23-28, 40-42.

73.     ICBINB Spray fits within the "Butter, margarine, oil, and shortening" category because it is intended to be used as a butter substitute and consumers do indeed use it to top vegetables, toast, and other foods as they would with butter.

74.     ICBINB Spray fits under the "Butter, margarine, oil, and shortening" category because it is marketed as a fat free and calorie free substitute for butter and margarine like other

products in the I Can't Believe It's Not Butter! line.

75.     In its promoted use as a butter-substitute and topping, ICBINB Spray lists a serving size of 5 sprays of 1g.  More recently, this serving size was removed altogether.

76.     Under FDA regulations, the proper minimum serving size for such products is one tablespoon. *See* 21 C.F.R. 101.12, Table 2. Because each tablespoon of ICBINB Spray contains approximately 27.3 calories and 2.9 grams of fat, a proper label would state that the product contains a 1160 calories and 124 grams of fat for the bottle as a whole, and 32 calories and 3.2 grams of fat per serving.

**Defendants Advertise ICBINB Spray as a 0-Calorie Topping but**

**Fail to Disclose That It Is Not a Low Calorie Food.**

77.     Express nutrient content claims are any direct statement about the level (or range) of a nutrient in the food.  21 C.F.R. §101.13(b)(1).

78.     The label or labeling of a product may not contain a statement about the amount or percentage of a nutrient if the statement on the food implicitly characterizes the nutrient in the food and is not consistent with the definition for a claim unless it carries a disclaimer adjacent to the statement that the food is not "low" in the nutrient.  21 C.F.R. §101.13(i).

79.     Here, Defendant promoted ICBINB Spray as a butter-substitute for topping and imparting flavor to foods.  See ¶

80.     On the front label, Defendants marketed ICBINB Spray as "0 calories per serving."

81.     By definition, a product may claim to be zero calories only if it contains less than 5 calories per reference amount customarily consumed *and* per labeled serving. 21 C.F.R. 101.60(b)(1)(i) (emphasis added).

82.     As a butter substitute and topping, ICBINB Spray's "zero calories per serving" statement is not consistent with the definition of a "zero calories" claim because the reference amount for butter-substitutes is 1 tablespoon (or the equivalent thereof).

83.     As a butter substitute and topping, ICBINB Spray's "zero calories per serving"

CLASS ACTION COMPLAINT

19

statement is not consistent with the definition of a "zero calories" claim because when used as a topping, ICBINB Spray contributes more than 5 calories to the diet.

84.    As a butter-substitute and topping, ICBINB Spray's "zero calories per serving" statement does not meet the definition of "zero calories" because "five sprays" or 1g is not an established reference amount customarily consumed for any "Fats and Oils" product.

85.    Defendants' "0 calories per serving" claims impliedly represented that ICBINB Spray is 0 calories when used as a butter-substitute.

86.    Defendants' "0 calories per serving claims" impliedly represented that ICBINB Sprays is 0 calories when used as a topping to flavor foods.

87.    Defendants "0 calories per serving claims" and dual serving size recommendations (1 spray and 5 sprays) impliedly represented that ICBINB Spray continues to be zero calories no matter how much product is consumed.

88.    In the absence of a disclosure, Defendants' "zero calories per serving" claims impliedly represented that ICBINB Spray is actually a zero calorie food.

89.    Defendants' "0 calories per serving" claims are false and misleading because they suggest that ICBINB Spray does not contain calories.

### Defendants Were Not Entitled to Label ICBINB Spray

### 0-Calories or 0-g Trans Fat Without Also Telling Consumers that

### <u>ICBINB Spray is Actually 40% Vegetable Oil.</u>

90.    To perpetuate the belief among consumers that ICBINB Spray is actually free of fat and calories and to otherwise obscure its true nutritional profile, Defendants made 0 calories and 0g trans fat representations on ICBINB Spray's front label without also disclosing that ICBINB Spray is actually "40% vegetable oil."

91.    In addition to regulations that require a manufacturer to disclose the total number of calories and fat per serving in the nutritional label, see paragraphs 61 and 62, the FDA has promulgated regulations governing nutrient content claims generally. *See* 21 C.F.R. §101.13, "Nutrient content claims –general principles".

92.     These regulations apply to claims made outside of the nutritional label that expressly or implicitly characterize the level of a nutrient of the type required to be in the nutritional facts panel, including claims about fat and calories.  21 C.F.R. §101.13(b); 21 C.F.R. §101.9(c)(1-2); 21 C.F.R. §101.13(c).

93.     Claims regarding the calorie and fat content of a food must comply with requirements governing nutrient content claims generally, 21 C.F.R. §101.13, in addition to requirements governing nutrient content claims for calories, 21 C.F.R. §101.60, and nutrient content claims for fats, 21 C.F.R. §101.62.   *See* 21 C.F.R. 101.13(b), citing subpart D "Specific Requirements for Nutrient Content Claims," 21 C.F.R. §101.54-101.69.

94.     Manufacturers are not permitted to include a nutrient content claim about fats or calories unless they also include a statement of identity on the front label.  21 C.F.R. §101.13(f).

95.     The statement of identity is the common or usual name of the food or in the absence thereof an appropriately descriptive term.  21 C.F.R. §101.3(b).  It tells the consumer – in as simple and direct terms as possible – the basic nature of the food or its characterizing properties or ingredients.  21 C.F.R. §102.5(a).

96.     When the presence of an ingredient is material to the consumer, the statement of identity must include the percentage of that ingredient in easily legible boldface print or type, in distinct contrast to other printed or graphic material and in a height not less than one-eighth inch.  21 C.F.R. §102.5(b).

97.     Further, if consumers may otherwise be misled about the presence or absence of an ingredient or component, the statement of identity must also include a statement denoting the presence or absence of that ingredient or component, e.g., "containing (or contains) _____." 21 C.F.R. §102.5(c).

98.     Additionally, nutrient content claims cannot be more than twice the size of the statement of identity and cannot be in an unusual type style relative to the statement of identity.  21 C.F.R. §101.13(f); 21 C.F.R. §101.3(d).

99.     Defendants ignored these regulations and made express claims regarding the trans

fat and calorie content of ICBINB Spray on its front label without also including a statement or identity and statement disclosing the presence of fat and calories.

100.    As described in paragraph 36, Defendants represented that ICBINB Spray was "0 g trans fat per serving" "0 calories per serving" and more recently "0 calories per 1 spray" without also including a statement of identity telling consumers that ICBINB Spray is actually 40% vegetable oil or liquid margarine.

101.    Further, because Defendants' labels suggested that ICBINB Spray is wholly free of fat, trans fat and calories, Defendants were required to including a statement denoting the presence of fat and calories next to the statement of identity (e.g., "40% vegetable oil spread, containing 124 g fat and 1160 calories per bottle").

102.    Throughout the class period and until approximately mid-2018, ICBINB Spray did not, however, include a statement of identity – telling consumers that ICBINB Spray is actually 40% vegetable oil, or liquid margerine. Throughout the class period, ICBINB Spray also failed to include a statement denoting the presence of fat, saturated fat and calories.

103.    Defendants' failure to inform consumers that ICBINB Spray is actually 40% vegetable and contains fat and calories perpetuated the belief among consumers that ICBINB Spray contained a negligible (if any) amount of fat and calories on a percentage basis.

104.    Defendants' failures also rendered their "0 trans fat" and "0 calories" claims on ICBINB's front label unlawful and in violation of FDA regulations.

**Defendants' 0 Fat and 0 Calories Representations Were Material to Consumers and Induced Them Into Purchasing ICBINB Spray at a Price Premium.**

105.    It is well document and well-known among food manufacturers that consumers are willing to pay more for products that claim to boost health and weight loss.  For instance, a 2015 survey conducted by Nielson, which polled over 30,000 individuals online, found that consumers are willing to pay significant more for diet products that can assist them in maintaining or losing

weight.[21]

106.     ICBINB Spray is an ordinary margarine spread but it costs nearly four times more than other margarines because it is falsely advertised as 0-fat, 0-trans fat, 0 saturated fat, 0 calories and 0 cholesterol.

107.     Despite its cost, consumers are willing to pay more for ICBINB Spray because they believe it is nutritionally superior to butter and other margarines by virtue of being free of fat (including types of fat) and calories.

108.     Despite its cost, many consumers, looking to lose weight and maintain a healthy diet, faithfully purchased several bottles a week because it was one of the only "free" foods that they could use to flavor vegetables and other foods.

## **Defendants Should Have Known That Its Labels Were Deceptive.**

109.     Defendants know that its product was mislabeled and engendered confusion. The internet is replete with complaints echoing that of the named plaintiff.  For example, a contributor to the website "sparkpeople.com" writes, "I agree that most nutritional information can be misleading, but the butter spray takes the cake!  Based on their logic, Doritos could advertise their chips as being 0 cal and 0 fat if they dropped the serving size down to half a chip.  They should not legally be allowed to advertise a product with such a small serving size.  Not to mention it's next to impossible to measure.  Nor is it a valid form of measurement.  A more realistic approach would be to base the nutrition info on a tsp. of spray."[22]

110.     Even leaders in the weight-loss industry believe that ICBINB Spray is inherently free of fat and calories.  For instance, the Weight Watchers app which consumers can use to scan labels and calculate points, rates ICBINB Spray as a "freebie" or "zero" points no matter how much product is consumed.  Other margarine spreads are not zero points

---

[21] https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#3c4bbd9475c5

[22] https://www.sparkpeople.com/ma/I-Can%27t-Believe-It%27s-Not-Butter-Spray-full-of-fat!/1/1/31440612

111.    Consumers have written the Defendants directly to complain or simply inquire about the nutritional content of ICBINB Spray.  As a matter of policy, Defendants have refused to release the nutritional content of ICBINB Spray including the true measure of fat and calories on a per serving basis or otherwise through direct response or label change.

112.    Since 2012, several class actions have been filed on behalf of consumers in various states alleging that ICBINB Spray is improperly and misleadingly labeled 0-fat and 0-calories.  In response, Defendants have refused to modify their labels to disclose that ICBINB Spray contains fat and calories. Instead, they removed the "5 spray" serving size for "topping" applications knowing that ICBINB Spray does not function as a cooking spray and while continuing to promote it as a topping and represent that it is a diet food, free of fat (including types of fat) and calories.

113.    In March of 2004, the FDA issued a guidance letter to the food industry that indicated the FDA was concerned about the use of improper serving sizes.   The letter stated:

> Dear Food Manufacturer:
>
> As you are aware, the Food and Drug Administration (FDA) is involved in an initiative to give consumers helpful information that will enable them to make more informed choices about their diets and lifestyle in an effort to reduce the incidence of overweight and obesity in the United States.  A key component in providing nutrition information to consumers is the "Nutrition Facts" panel on food packages. In order for this nutrition information to be useful to consumers, it must be accurate and based on a meaningful amount of food.

114.    Defendants have ignored consumer complaints, guidance from the FDA and allegations of fraud brought by consumers.  Despite repeated requests to change their labels, they continue to withhold accurate nutritional information from the consumer.

**Defendants Will Continue To Mislead Consumers.**

115.    Defendants have an incentive to continue to make false representations because they know consumers rely on and are willing to pay more for products that claim to be free of fat (including types of fat) and calories.

116.    In 2018, Defendants rolled out a new label for ICBINB Spray.  The label still represents that the product contains zero calories and no trans fat.  But Defendants eliminated the

5 spray serving size for "topping" from the nutritional panel, noting only that the product contains no fat and calories per one spray.

117.  Thus, despite ample evidence that consumers are misled by its labels, Defendants have modified their package to remove information in a clear attempt to avoid legal liability relating to a made-up serving size, rather than to add material information that eliminate consumer confusion.

118.  Further, despite removing the "5 spray" serving size for topping from the product's label, Defendants continue to market ICBINB Spray as a topping and has actually expanded its efforts to promote the product as a topping through influencers.  *See* ¶ ¶ 21, 22, 28.

119.  For instance, one influencer writes, "I have no idea where I would be without this spray! I am on a very strict low fat diet given I have gallstones and this is the only butter alternative on the market... in my area at least. Yes it may not taste exactly like butter, but it sure comes very close. I use this spray on everything from toast to pasta. My husband has even started to use it!"[23]

120.  Consumers are not food scientists and cannot test products to determine the calorie count or fat content of products.  They rely on product labels and truthful advertising when deciding to purchase products including ICBINB Spray.

**Plaintiff Josephine Torres**

121.  Plaintiff Josephine Torres was a reasonably diligent consumer looking for products that were dietetic and free of calories and fats (including types of fat).

122.  While shopping in grocery stores in and around her home in Eastchester, New York, Plaintiff Torres encountered ICBINB Spray in the refrigerated section of grocery stores.  She noted that the product appeared next to butter and margarine – products for which ICBINB Spray was promoted as a fat-free and calorie-free alternative.

123.  Plaintiff saw and read representations on the front label that ICBINB Spray is "0 calories" and "0 trans fat."

---

[23] https://www.influenster.com/reviews/i-cant-believe-its-not-butter-spray-original

124.     Before deciding to purchase ICBINB Spray, Plaintiff also inspected the nutritional panel.   On the back label, she saw and read representations that ICBINB Spray contains "0 calories" and "Total Fat 0g."

125.     Plaintiff Torres noted that the label was peppered with "0" claims and, as a result, she thought that ICBINB Spray was a diet food that would help her maintain her weight and a healthy heart.

126.     Plaintiff Torres noted that there were two serving sizes on the label (both listed as 0 calories and 0 fat) which lead her to believe that she could increase her consumption because the product was inherently free of fat, calories, saturated fat, cholesterol and trans fat.

127.     Plaintiff was unaware that ICBINB Spray is an ordinary margarine spread and saw no disclosures or other indication on the label that ICBINB actually contains fat (including types of fat) and calories.

128.     Plaintiff Torres relied on these representations in deciding to purchase ICBINB Spray.   She simply had no reason to doubt that ICBINB Spray was inherently free of fat and calories – not fat-free and calorie-free by virtue of an unrealistic serving size that does not comport with how consumers use the product or how it is promoted.

## CLASS ALLEGATIONS

129.     In addition to their individual claims, Plaintiff bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure.   Plaintiff seeks to represent the following groups of similarly situated persons, defined as follows:

> All persons who, between June 16, 2014 and the present, purchased, in any state within the United States except California and Missouri, any bottle of ICBINB Spray (the "Class"); and
> All members of the Class who made an ICBINB Spray purchase in New York (the "Subclass").

130.     Excluded from the Class are Defendants; the officers, directors or employees of Defendant; any entity in which Defendants have a controlling interest; and any affiliate, legal representative, heir or assign of Defendants; also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her

immediate family and judicial staff, any juror assigned to this action and those claiming that they have suffered any personal injury as a result of consuming Defendants' misbranded products.

131.    Plaintiff does not know the exact number of Class and Subclass members at the present time.  However, due to the nature of the trade and commerce involved, there are many thousands of class members, such that joinder of all Class members is impracticable.

132.    The Class is readily ascertainable through Defendants' business records and notice can be provided by publication and through techniques similar to those customarily used in other consumer fraud cases and complex class actions.

133.    There are questions of law and fact common to the Class and Subclass.  Defendants' advertising, marketing, labeling and promotional practices were supplied uniformly to all members of the Class and Subclass who were similarly affected by having purchased ICBINB Spray for their intended and foreseeable purpose as fat free and calories free alternative to butter and margarine.

134.    Plaintiff asserts claims that are typical of the Class and Subclass.  Plaintiff and all Class members have been subjected to the same wrongful conduct because they have all purchased ICBINB Spray which was mislabeled "0 Fat" and "0 Calories." Like other members of the class, Plaintiff overpaid for ICBINB and/or purchased a product that she otherwise would not have.

135.    Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass.  Plaintiff is represented by counsel competent and experienced in both consumer protection and class action litigation.

136.    Class certification is appropriate because Defendants have acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

137.    Class certification is appropriate because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class and Subclass, including, *inter alia*, the following:

      i.      Whether Defendants misrepresented or omitted material facts in

connection with the promotion, marketing, advertising, packaging, labeling and sale of ICBINB;

ii.     Whether Defendants represented that ICBINB has characteristics, benefits, uses or qualities that it does not have;

iii.    Whether Defendants' nondisclosures and misrepresentations would be material to a reasonable consumer;

iv.    Whether the nondisclosures and misrepresentations were likely to deceive a reasonable consumer in violation of the consumer protection statutes of the various states;

v.     Whether the nondisclosures and misrepresentations were likely to deceive a reasonable consumer;

vi.    Whether the nondisclosures and misrepresentations constitute an unlawful business practice;

vii.   Whether the nondisclosures and misrepresentations constitute an unfair business practice;

viii.  Whether Defendants breached an express warranty made to Plaintiffs and the Class;

ix.    Whether Defendants intentionally misrepresented that ICBINB Spray is free of fat (including types of fat) and calories;

x.     Whether Defendants' unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class;

xi.    Whether Defendants were unjustly enriched by its deceptive practices; and

xii.   Whether Plaintiff and the members of the Class are entitled to damages, restitution, and/or equitable or injunctive relief.

138.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class and Subclass members is

impracticable. Furthermore, because the restitution and damages suffered, and continue to be suffered, by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

139.     The prosecution of separate actions by the individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Unjust Enrichment / Common Law Claim for Restitution

140.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

141.     Plaintiff brings this claim individually and on behalf of the Nationwide Class.

142.     Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched.  At the core of each states' law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state.

143.     Plaintiff and the Class members conferred a benefit on the Defendants by purchasing ICBINB Spray.

144.     Defendants have been unjustly enriched in retaining the revenues from Class members' purchases of ICBINB Spray, which retention under these circumstances is unjust and inequitable because Defendant falsely represented that:  ICBINB Spray is nutritionally superior to

butter and margarine by virtue of it being free of fat (including types of fat) and calories; ICBINB Spray is a 0 fat and 0 calories product in its promoted use as a topping, ICBINB Spray is a product that is inherently free of fat and calories; ICBINB Spray contains insignificant amounts of fats and calories without disclosing that the Product is actually 40% vegetable oil containing significant amounts of fat and calories, and which caused injuries to Plaintiff and Class members because they paid a price premium due to the mislabeling of ICBINB Spray.

145.    Because Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court.

146.     Plaintiff, therefore, seeks an order requiring Defendants to make restitution to them and other members of the Class.

## SECOND CAUSE OF ACTION

### Fraud By Concealment

147.     Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

148.    As set forth above, Defendants concealed material facts concerning the nutritional content of ICBINB Spray.  Defendants had a duty to make these disclosures based on its superior knowledge regarding the composition of its product, as well as its affirmative misrepresentations to the contrary.

149.    Defendants actively concealed material facts, in whole or in part, with the intent to induce Plaintiff and members of the Class to purchase ICBINB Spray.

150.    Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed facts.

151.    As a result of the concealment of the facts, Plaintiff and the Class sustained damage in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## Breach of Express Warranty

152.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

153.    Plaintiff brings this claim individually and on behalf of the Nationwide Class.

154.    Defendants expressly warranted in their marketing, advertising and promotion that ICBINB Spray is free of fat (including types of fat) and calories.

155.    Defendants expressly warranted in their marketing, advertising and promotion that ICBINB Spray is nutritionally superior to butter and margarine spreads by virtue of being free of fat and calories.

156.    Plaintiff and members of the Class purchased ICBINB based on these express warranties.

157.    ICBINB Spray is not, however, free of fats and calories as expressly warranted.

158.    ICBINB Spray is not, however, nutritionally superior to butter and margarine by virtue of it being free of fats and calories.

159.    Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because: (1) they purchased ICBINB  Spray and/or at a premium based on Defendant's misleading product labels and (2) ICBINB Spray did not have the composition, attributes, characteristics, nutritional content or value as promised.

## FOURTH CAUSE OF ACTION

## Intentional Misrepresentation

160.    Plaintiff realleges and incorporates by reference all paragraphs alleged herein.

161.    Defendants materially and intentionally mislabeled ICBINB's nutritional values as alleged herein.

162.    Defendants' misrepresentations about the fat and calorie content of ICBINB Spray were intended to influence the purchasing decisions of Plaintiff and members of the Class who justifiably relied upon the accuracy of Defendants' labels.

163.    Defendants' misrepresentations caused Plaintiff and the Class to purchase a product that they would not have otherwise purchased and/or at a price that they would not have otherwise paid.

**FIFTH CAUSE OF ACTION**

**Violations of New York General Business Law § 349**

**(Deceptive acts and practices unlawful)**

164.    Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

165.    Plaintiff brings this claim individually and on behalf of the other members of the Nationwide Class for violations of NY GBL § 349.

166.    Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the other members of the New York Class for Defendants' violations of NY GBL § 349.

167.    Defendants' business act and practices and/or omissions alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect consumers from those who engage in unconscionable, deceptive or unfair acts or practices in the conduct of any business, trade or commerce.

168.    The practices of Defendants described throughout this Complaint, were specifically directed to consumers and violate the NY GBL § 349 for, inter alia, the following reasons:

     i.    Defendants knowingly and falsely represents and advertises that ICBINB Spray is nutritionally superior to butter and margarine by virtue of it being free of fat and calories;

    ii.    Defendants knowingly and falsely represents and advertises that ICBINB Spray is a 0 fat and 0 calories product in its promoted use as a topping;

    iii.    Defendants knowingly and falsely represents and advertises that ICBINB Spray is inherently free of fat and calories;

    iv.    Defendants knowingly and falsely represents and advertises that and

ICBINB Spray contains an insignificant amount of fat without disclosing that it is actually 40% vegetable oil containing significant amounts of fat and calories.

169. Defendants caused Plaintiff and the Classes to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct; Defendant made material representations and statements of fact to Plaintiff and the Classes that resulted in Plaintiff and the Classes reasonably believing the represented or suggested state of affairs are what they actually were; and the practices employed by Defendant, whereby Defendants advertise, promote, and market that its Product is free of fat and calories (including types of fat) is unfair, deceptive, and misleading.

170. Deceptive trade practices are malicious, willful, wanton and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

171. Defendants' actions impact the public interest because Plaintiff and members of the Classes were injured in exactly the same way as thousands of others purchasing the Products as a result of Defendants' generalized course of deception.

172. The foregoing deceptive acts, and practices were directed at consumers.

173. The foregoing deceptive acts, and practices caused Plaintiff and other Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and other Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

**SIXTH CAUSE OF ACTION**

**Violations of New York General Business Law § 350**

**(False Advertising Unlawful)**

174. Plaintiff realleges and incorporates by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

175.    Plaintiff brings this claim individually, as well as on behalf of members of the Nationwide class, for violations of NY GBL § 350.

176.    Alternatively, should the Court not certify Plaintiff's proposed Nationwide Class, Plaintiff brings this claim individually and on behalf of the members of the New York Class for violations of NY GBL § 350.

177.    Defendants have been and/or engages in the "conduct of ... business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

178.    New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity ... if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of ... representations [made] with respect to the commodity ..." N.Y. Gen. Bus. Law § 350-a(1).

179.    Defendant caused to be disseminated throughout New York, through advertising, marketing and other publications, statements that are untrue and misleading.

180.    Defendants' affirmative misrepresentation that ICBINB Spray is free of fat (including types of fat) and calories is material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendants' material misrepresentations.

181.    Defendants violate NY. Gen. Bus. Law § 350 because its' "0 fat" "0 trans fat" and "0 calories" misrepresentations are material and likely to deceive a reasonable consumer.

182.    Plaintiff and members of the Classes have suffered an injury as a result of Defendants' false and misleading advertising.

183.    Pursuant but not limited to N.Y. Gen. Bus. Law § 350-e, Plaintiff and members of the Classes seek monetary damages (including actual damages, and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, any interest and attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION

### Violation of the Consumer Protection Acts of the Various States

184.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

185.    Plaintiff brings this claim individually and on behalf of the Nationwide Class.

186.    By mislabeling and selling ICBINB Spray as a nutritionally superior to butter and margarine spreads by virtue of it being free of fat and calories when in fact it is not, Defendants have engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes below:

187.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ala. Code. §§8.19-1, *et seq*.

188.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Alaska Stat. Code §§ 45.50.471, *et seq*.

189.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ariz. Rev. Stat §§ 44-1522, *et seq*.

190.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ark. Code Ann. §§ 4-88-107, *et seq*.

191.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Colo. Rev. Stat. §§ 6-1-101, *et seq*.

192.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Conn. Gen. Stat. §§ 42-110b, *et seq*.

193.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Del. Code Ann. tit. 6, §§ 2511, *et seq*.

194.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of D.C. Code Ann. §§ 28-3901, *et seq*.

195.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Fla. Stat. Ann. §§ 501.201, *et seq*.

196.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ga. Code Ann. §§ 10-1-392, *et seq.*

197.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Haw. Rev. Stat. §§ 480, *et seq.*

198.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Idaho Code §§ 48-601, *et seq.*

199.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 Ill. Comp. Stat. 505/1, *et seq.*

200.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ind. Code Ann. §§ 24-5-0.5-1, *et seq.*

201.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Iowa Code §§ 714.16, *et seq.*

202.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Kan. Stat. §§ 50-623, *et seq.*

203.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Ky. Rev. Stat.  Ann. §§ 367.110, *et seq.*

204.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of La. Rev. Stat. §§51:1404, *et seq.*

205.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Me. Rev. Stat. tit. 5, §§ 205-A, *et seq.*

206.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Md. Code. Ann., Com. Law §§ 13-101, *et seq.*

207.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mass. Gen. Laws ch. 93A §§ 1, *et seq.*

208.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mich. Comp. Laws §§ 445.901, *et seq.*

209.    Defendants have engaged in unfair competition or unfair or deceptive acts or

practices in violation of Minn. Stat. §§ 8.31, *et seq.*

210. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Miss. Code Ann. §§ 75-24-3, *et seq.*

211. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code Ann. §§ 30-14-101, *et seq.*

212. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Neb. Rev. Stat. §§ 59-1601, *et seq.*

213. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Nev. Rev. Stat. §§ 598.0903, *et seq.*

214. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. Rev. Stat. Ann. §§ 358-A:1, *et seq.*

215. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J. Stat. Ann. §§ 56:8-1, *et seq.*

216. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. Stat. Ann. §§ 57-12-1, *et seq.*

217. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. Gen. Bus. Law §§ 349, *et seq.*

218. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. Gen. Stat §§ 75-1.1, *et seq.*

219. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. Cent. Code §§ 51-15-01, *et seq.*

220. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Okla. Stat. tit. 15 §§ 751, *et seq.*

221. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Or. Rev. Stat. §§ 646.605, *et seq.*

222. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 3 PA. Cons. Stat. §§ 201-1, *et seq.*

223.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

224.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. Code §§ 39-5-10, *et seq.*

225.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. Codified Laws §§ 37-24-1, *et seq.*

226.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tenn. Code Ann. §§ 47-18-101, *et seq.*

227.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Tex. Bus. & Com. Code Ann. §§ 17.41, *et seq.*

228.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Utah Code. Ann. §§ 13-11-1, *et seq.*

229.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Vt. Stat. Ann. Tit. 9, §§ 2451, *et seq.*

230.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Va. Code Ann. §§ 59.1-196, *et seq.*

231.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wash. Rev. Code §§ 19.86.010, *et seq.*

232.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. Va. Code §§ 46A-6-101, *et seq.*

233.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wis. Stat. §§ 100.18, *et seq.*

234.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Wyo. Stat. Ann. §§ 40-12-101, *et seq.*

235.    The acts, practices, misrepresentations and omissions by Defendants described above, and Defendants' dissemination of deceptive and misleading advertising and marketing materials concerning ICBINB Spray, constitutes unfair competition and unfair or deceptive acts

or practices within the meaning of each of the above-enumerated states, because each of these statutes generally prohibits deceptive conduct in consumer transactions.

236.    Defendants violated each of these statutes by representing that ICBINB Spray is free of fat (including types of fat) and calories when, in fact, it is not.

237.    Plaintiff and Class Members were injured as a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, because: (1) Plaintiff and the Class were induced to purchase a product they would not have otherwise purchased had they known its true composition, and (b) Plaintiff and the Class were induced to pay substantially more for ICBINB Spray than they would have paid if its true characteristics had not been concealed or misrepresented.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf all others similarly situated, respectfully requests that this Court enter a judgment against Defendants and in favor of Plaintiff, and grant the following relief:

    a.    Determine that this action may be maintained as a Class action with respect to the Class and Subclass identified herein and certify it as such under Rules 23(b)(2) and 23(b)(3), or alternatively certify all issues and claims that are appropriately certified, and designate and appoint Plaintiff as Class Representatives and his counsel as Class Counsel;

    b.    Declare, adjudge and decree the conduct of the Defendants as alleged herein to be unlawful, unfair and/or deceptive;

    c.    Notify all Class and Subclass members of the truth regarding the fat and calorie content of ICBINB Spray;

    d.    Award Plaintiff, the Class, and Subclass members actual, compensatory damages, as proven at trial

    e.    Award Plaintiff, the Class, and Subclass restitution of all monies paid to Defendants as a result of unlawful, deceptive, and unfair business

practices;

f.    Award Plaintiff, the Class, and Subclass members exemplary damages in such amount as proven at trial;

g.    Award Plaintiff and the Class and Subclass members reasonable attorneys' fees, costs, and pre- and post-judgment interest; and

h.    Award Plaintiff and the Class and Subclass members such other further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

## **JURY TRIAL DEMAND**

Plaintiff, by counsel, requests a trial by jury on his legal claims, as set forth herein.

Dated:  June 30, 2020          COTCHETT PITRE & MCCARTHY

By ___*/s/ Alexander E. Barnett*___
ALEXANDER E. BARNETT, AB7292
COTCHETT PITRE & MCCARTHY
40 Worth Street, 10th Floor
New York, NY 10013
Telephone: 212-201-6820
Facsimile: 917-398-7753
Email: abarnett@cpmlegal.com

JUSTIN BERGER  (to be admitted *pro hac vice*)
SARVENAZ FAHIMI  (to be admitted *pro hac vice*)
COTCHETT PITRE & MCCARTHY
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Facsimile: 650.697.0577
Email: jberger@cpmlegal.com
sfahimi@cpmlegal.com

UREKA IDSTROM (to be admitted *pro hac vice*)
THE EUREKA LAW FIRM
5606 Belinder Road
Fairway, KS 66205
Telephone: 816-714-4130
Email: uidstrom@eurekalawfirm.com

*Attorneys for Plaintiff and the Proposed Class*