UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/16/2023

JOSEPHINE TORRES, *Individually and on Behalf of All Others Similarly Situated*,

Plaintiff,

-against-

KOHLBERG, KRAVIS, ROBERTS & CO. L.P., CONOPCO, INC., and UPFIELD U.S., INC.,

Defendants.

1:20-cv-5025 (MKV)

OPINION AND ORDER
DENYING IN PART
AND
GRANTING IN PART
MOTION TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff brings this putative class action alleging that Defendants have deceptively marketed the product "I Can't Believe It's Not Butter! Spray" as a diet food. Having previously filed an unsuccessful motion to transfer, stay, or dismiss this case based on the existence of an earlier-filed case in California, Defendants now move to dismiss for lack of subject matter jurisdiction. Defendants urge the Court to dismiss this entire case, arguing that Plaintiff fails to allege any injury in fact. Defendants also argue that the Court should dismiss the case against Defendants Kohlberg, Kravis, Roberts & Co. L.P. and Conopco, Inc. because those defendants did not cause and cannot redress Plaintiff's alleged injury. Defendants further argue that Plaintiff lacks standing to assert claims about versions of the product she did not buy, to assert claims under the laws of states other than New York, and to seek injunctive relief. For the reasons set forth below, the motion to dismiss for lack of subject matter jurisdiction [ECF No. 50] is DENIED IN PART and GRANTED IN PART.

1

I.    BACKGROUND[1]

**A. Plaintiff's Complaint**

Plaintiff Josephine Torres initiated this putative class action by filing a complaint [ECF No. 1]. She seeks to represent a class consisting of all persons who, between June 2014 and the present, purchased, in any state other than California and Missouri, a bottle of I Can't Believe It's Not Butter! Spray ("ICBINB Spray" or "ICBINBS"). Cmpl. ¶¶ 121–129. Plaintiff alleges that she, and the other putative class members, were injured when they purchased ICBINB Spray, and paid a premium for it, because of allegedly misleading representations about the fat and calorie contents of the product. *See* Cmpl. ¶¶ 1, 105–108, 121–128, 159, 237.

Specifically, as relevant here, the ICBINB Spray label states that the product contains 0 fat and 0 calories per serving. *See* Cmpl. ¶¶ 25, 34, 126. Plaintiff alleges that ICBINB Spray uses an unrealistically small serving size, which renders the label misleading. *See* Cmpl. ¶ 59. According to Plaintiff, ICBINB Spray is marketed as a diet food but is "an ordinary margarine spread with significant amounts of fat . . . and calories." Cmpl. ¶ 44. Plaintiff alleges that, based on the label, she believed the product was "*inherently* free" of fat and calories, and so she believed "she could increase her consumption." Cmpl. ¶ 126 (emphasis added).

In their brief, Defendants admit that ICBINB Spray is not inherently free of fat and calories [ECF No. 51 ("Def. Mem.") at 3 & n.1]. Rather, ICBINB Spray merely contains "an insignificant amount of calories and fat *per spray*" of the product. Def. Mem. at 3 n.1 (emphasis added).

---

[1] The facts underlying Plaintiff's claims are taken from the Complaint [ECF No. 1 ("Cmpl.")]. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Where facts related to this Court's jurisdiction are in dispute, the Court properly considers "evidence outside the pleadings." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 441 (2d Cir. 2019). In particular, Defendants submit: the declaration of David Schwartz, Vice President and General Counsel, North America for Unilever United States, Inc. [ECF Nos. 52, 55 ("Schwartz Decl.")]; the declaration of Christopher Lee, Managing Director in the Legal Department at Kohlberg, Kravis, Roberts & Co. L.P. [ECF No. 53]; and a contract governing a 2015 transfer of assets among companies [ECF No. 52-3 ("Contribution Agreement")]. The Court also considers certain documents cited in the Complaint.

According to Defendants, although the label states that ICBINB Spray contains 0 fat and 0 calories *per serving*, no reasonable person could believe that it is "fat and calorie free when consumed in large quantities." Def. Mem. at 3 n.1.

**B. The Defendants**

Plaintiff names as defendants Conopco, Inc. ("Conopco"), Kohlberg, Kravis, Roberts & Co. L.P. ("KKR"), and Upfield U.S., Inc. ("Upfield"). *See* Cmpl. ¶¶ 2–4. Plaintiff alleges that Defendant Conopco "is an entity wholly owned by [non-party] Unilever United States, [Inc.]," which "conducts its business in the United States principally through Conopco," and that Conopco "marketed, sold, and distributed" ICBINB Spray "during the class period." Cmpl. ¶ 3. Plaintiff alleges that Defendant KKR "purchased the ICBINB brand from Unilever United States, Inc." in 2018. Cmpl. ¶ 2. Plaintiff also alleges that Defendant Upfield has "manufactured and sold" ICBINB Spray "[d]uring the class period." Cmpl. ¶ 4.

Defendants dispute the allegations about Conopco and KKR. Defendants submit evidence purporting to show that neither Conopco, nor KKR has ever owned or had any responsibility for marketing ICBINB Spray [ECF Nos. 52 ("Schwartz Decl."), 52-3 ("Contribution Agreement"), 53 ("Lee Decl.")]. Defendants agree, however, that Defendant Upfield has manufactured and sold ICBINB Spray during the alleged class period [ECF No. 51 ("Def. Mem.") at 1].

With respect to Conopco, Defendants concede that Unilever United States, Inc. "indirectly owned the assets of the I Can't Believe It's Not Butter!® brand, including ICBINB [Spray], until 2015." Def. Mem. at 5 (citing Schwartz Decl. ¶ 4). Defendants further concede that "Conopco is a wholly owned direct subsidiary of Unilever United States." Def. Mem. at 5 (citing Schwartz Decl. ¶ 1). However, Defendants assert that "Plaintiff is simply wrong that 'Conopco marketed, sold, and distributed [ICBINBS] . . . during the class period.'" Def. Mem. at 5.

3

With respect to KKR, Defendants assert that KKR "never" purchased ICBINB Spray from Unilever United States, Inc. Def. Mem. at 7 (citing Lee Decl. ¶ 5). Defendants further aver that KKR "never had any role in managing the I Can't Believe It's Not Butter!® brand or business." Def. Mem. at 6 (citing Lee Decl. ¶ 8). Defendants stress that KKR is merely an "investment advisor." Def. Mem. at 6 (citing Lee Decl. ¶ 8).

To support their assertions about Conopco and KKR, Defendants describe a number of transactions beginning in April 2015, many details of which Defendants seek to maintain under seal.[2] *See* Def. Mem. at 5–7. According to Defendants, in 2015, Unilever United States, Inc. "contributed" the ICBINB assets, including ICBINB Spray, to two companies that together comprised "the Unilever Baking, Cooking, and Spreading Business." Schwartz Decl. ¶ 4. One of those companies, Unilever BCS US Inc., ultimately became Defendant Upfield U.S., Inc., which all parties agree has manufactured and sold ICBINB Spray during the alleged class period. *See* Schwartz Decl. ¶ 11; Def. Mem. at 1; Cmpl. ¶ 4. The 2015 "Contribution Agreement" deals with potential legal liabilities [ECF No. 53-3]. *See* Schwartz Decl. ¶ 7.

Through the 2015 transactions, the Unilever Baking, Cooking, and Spreading Business came to be owned by two companies named Unilever N.V. and Unilever PLC. *See* Schwartz Decl. ¶¶ 4, 8; Def. Mem. at 6. Then, in July 2018, Unilever N.V. and Unilever PLC sold the Unilever Baking, Cooking, and Spreading Business to a company now known as Upfield B.V. *See* Schwartz

---

[2] The Court temporarily granted, pending the resolution of this motion, Defendants' request to maintain under seal the unredacted versions of their brief and exhibits submitted in support of their motion [ECF No. 58]. The Court has now carefully reviewed all of the redactions and concludes that they are not "narrowly tailored" to protect confidential business information. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006); *see Standard Inv. Chartered, Inc. v. Fin. Indus. Regul. Auth., Ind.*, 347 F. App'x 615, 617 (2d Cir. 2009); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 2023 WL 196134, at *3 (S.D.N.Y. Jan. 17, 2023). There are several problems with the redactions. For exmaple, Defendants redact certain information that is effectively disclosed in, or easily inferred from, other, public portions of the submissions in this case. In other instances, Defendants seek to redact information that is germane to the case, and the right of access and public interest outweigh the asserted need for privacy. Accordingly, by March 2, 2023, Defendants must (1) refile the documents at docket entries 51 and 52 with more narrowly tailored redactions; and (2) file a letter justifying the redactions they propose to maintain.

Decl. ¶ 8.  In connection with that sale, Unilever BCS US Inc. changed its name to Upfield U.S., Inc.  Schwartz Decl. ¶ 11.

Based on Defendants' evidence, Defendant *KKR* did not purchase ICBINB Spray from *Unilever United States, Inc.* in 2018.  See Def. Mem. at 7; Cmpl. ¶ 2; Lee Decl. ¶¶ 5, 6.  Rather, in 2018, "funds managed by KKR . . . invested in the acquisition of" the Unilever Baking, Cooking, and Spreading Business, including ICBINB Spray, from *Unilever N.V. and Unilever PLC*.  Def. Mem. at 7; *see* Lee Decl. ¶¶ 5, 6.  Those funds remain shareholders in Upfield B.V., which owns Defendant Upfield U.S., Inc., which, all parties agree, manufactures and sells ICBINB Spray.  *See* Def. Mem. at 1, 7; Lee Decl. ¶ 6.

Defendants do not explain the relationships, if any, between Unilever United States, Inc. and the other entities with "Unilever" in their names.  Nor do Defendants explain the ownership of ICBINB Spray before April 2015—beyond conceding that Unilever United States, Inc. indirectly owned ICBINB Spray until 2015—even though the alleged class period begins in 2014.  *See* Def. Mem. at 5 (citing Schwartz Decl. ¶ 4); Cmpl. ¶ 129.  Defendants suggest, but never clearly state, let alone demonstrate, that Unilever United States, Inc. owned ICBINB Spray through one of its subsidiaries other Conopco until 2015.  *See* Schwartz Decl. ¶ 6 (noting that the Contribution Agreement transferring ICBINB assets involved a subsidiary named "Unilever Manufacturing (US), Inc."); Def. Mem. at 5 n.3 (stating in a footnote that "Conopco does business as Unilever Home & Personal Care USA").

C. **Procedural History**

Shortly after Plaintiff initiated this action, Defendants moved to transfer, stay, or dismiss this case based on the existence of an earlier-filed case in the United States District Court for the Northern District of California about the allegedly deceptive ICBINB Spray label [ECF Nos. 35,

5

36]. *See Pardini v. Unilever United States, Inc.*, No. 4:13-cv-01675. The Court denied that motion because the "first-filed doctrine" very clearly did not apply [ECF No. 44].

Defendants then sought leave to file a motion to dismiss for failure to state a claim and for lack of subject matter jurisdiction [ECF No. 45]. The Court ruled that Defendants could not move to dismiss for failure to state a claim, but could move to dismiss for lack of subject matter jurisdiction [ECF No. 48]. The Court explained that the Federal Rules of Civil Procedure generally prohibit a party from "mak[ing] another motion" under Rule 12 after failing to "rais[e] a defense or objection that was available to the party but omitted from [the] earlier motion," but there is an exception for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(g)(2); Fed. R. Civ. P. 12(h)(3). The Court was clear: "Defendants may not argue failure to state claim" [ECF No. 48 at 2].

Defendants now move to dismiss for lack of subject matter jurisdiction, arguing that Plaintiff lacks standing for a variety of reasons [ECF Nos. 50, 51 ("Def. Mem."), 52–55, 57 ("Reply")]. Defendants first urge the Court to dismiss the entire case, arguing that Plaintiff fails to allege any injury in fact. Defendants next argue that Plaintiff lacks standing to sue Conopco and KKR because those defendants did not cause and cannot redress any alleged injury. Defendants also argue that Plaintiff lacks standing to assert claims based on versions of ICBINB Spray she did not personally buy; lacks standing to assert claims under the laws of states other than New York; and lacks standing to seek injunctive relief. Plaintiff opposes the motion [ECF No. 56 ("Pl. Opp.")].

## II.  LEGAL STANDARD

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the district court must take all undisputed facts in the complaint as true and draw all reasonable inferences in favor of the party asserting jurisdiction. *Tandon v.*

*Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, where jurisdictional facts are in dispute, the district court has "the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)). The party asserting subject matter jurisdiction must establish its existence by a preponderance of the evidence. *Id*. Evidence "may be presented by affidavit or otherwise." *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 441 (2d Cir. 2019) (quoting *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986)).

Under Article III of the United States Constitution, federal court jurisdiction is limited to "the resolution of cases and controversies." *Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008)). This constitutional limitation entails "the requirement that a plaintiff have standing." *Alliance for Envt'l. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). To meet this requirement, "(1) the plaintiff must have suffered an injury-in-fact; (2) there must be a causal connection between the injury and the conduct at issue; and (3) the injury must be likely to be redressed by a favorable decision." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (quoting *Jewish People for the Betterment of Westhampton Beach v. Vill. of Westhampton Beach*, 778 F.3d 390, 394 (2d Cir. 2015)). A plaintiff seeking to represent a class must personally establish standing for the lawsuit to proceed. *Id*.

### III. DISCUSSION

#### A. Plaintiff Alleges an Injury In Fact.

Defendants urge the Court to dismiss this entire case, arguing that Plaintiff fails to allege any injury in fact. *See* Def. Mem. at 1, 2–5. According to Defendants, Plaintiff fails to allege an injury because she never alleges that she actually used more than the serving size on the label.

7

Def. Mem. at 3–4. Rather, Defendants stress, Plaintiff alleges that the label led her to "*believe* that she could increase her consumption because the product was inherently free" of fat and calories. Def. Mem. at 3 (emphasis added) (quoting Cmpl. ¶ 126).

Defendants misunderstand Plaintiff's theory of injury. Plaintiff's alleged injury is not that she consumed too much ICBINB Spray and gained unwanted weight as a result. Instead, Plaintiff unmistakably alleges that her injury is that she was "induced to purchase a product [she] would not have otherwise purchased," and to purchase it at a higher price, because of allegedly misleading statements about the product on the label. Cmpl. ¶ 237; *see* Cmpl. ¶¶ 1 (alleging that Plaintiff "relied on [the alleged misrepresentation that ICBINB Spray is free of fat and calories] in deciding to purchase ICBINB Spray"), 105–108, 121–128, 159. As numerous courts have ruled, such an allegation easily satisfies the injury-in-fact prong of the Article III standing requirement. *See, e.g., Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 575 (S.D.N.Y. 2021); *DaCorta v. AM Retail Grp., Inc.*, 2018 WL 557909, at *6 (S.D.N.Y. Jan. 23, 2018); *Borenkoff v. Buffalo Wild Wings, Inc.*, 2018 WL 502680, at *4 (S.D.N.Y. Jan. 19, 2018); *Kacocha v. Nestle Purina Petcare Co.*, 2016 WL 4367991, at *7 (S.D.N.Y. Aug. 12, 2016); *see also Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013), as amended (Mar. 21, 2013) (noting that "incurring the expense of buying . . . soap would itself constitute an injury in fact"); *Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 53 (S.D.N.Y. 2016) ("that sort of 'paid too much' . . . harm is classic economic injury-in-fact"); *In re Smith Barney Transfer Agent Litig.*, 765 F. Supp. 2d 391, 399 (S.D.N.Y. 2011) (shareholders were directly injured if they were "induced to purchase shares" based on misleading statements).

Defendants are wrong to assert that Plaintiff alleges only an "injury in law" that does not give rise to Article III standing. Def. Mem. at 4–5 (quoting *TransUnion LLC v. Ramirez*, 141 S.

8

Ct. 2190, 2205 (2021)). Defendants insist: "*At heart*, Plaintiff's allegations of harm are entirely based on ICBINBS's purported failure to comply with relevant FDA regulations," and such "bare procedural violation[s], divorced from any concrete harm," are insufficient for standing. Def. Mem. at 4 (emphasis added) (quoting *TransUnion*, 141 S. Ct. at 2213) (brackets in original). But, as stated above, Plaintiff alleges a classic, concrete harm: she spent money because of allegedly misleading statements. *See* Cmpl. ¶ 237; Pl. Mem. at 2–3.

*At heart*, Defendants' argument is that Plaintiff fails to state a plausible claim because, according to Defendants, ICBINB Spray labels are not misleading. Defendants stress that "the product label clearly identifies the amount of calories and fat ***per serving***." Def. Mem. at 3 (emphasis in original). In Defendants' view, it is simply "implausible" that Plaintiff thought that she could consume "***more*** than the identified serving sizes . . . . but that the fat and calorie contents would remain [zero]," since the ingredients of the butter spray "could never reasonably be considered [inherently] fat and calorie free when consumed in large[] quantities." Def. Mem. at 3 & n.1 (emphasis in original). This argument is a challenge to the merits of Plaintiff's claim and is not about standing. *See SM Kids, LLC v. Google LLC*, 963 F.3d 206, 212 (2d Cir. 2020) (the Second Circuit has cautioned against attempts to conflate whether the plaintiff has standing with whether the plaintiff states a claim).

Defendants' position is that Plaintiff fails plausibly to allege that she was misled. But Defendants forfeited their opportunity to file a pre-answer motion to dismiss for failure to state a claim when defense counsel failed to raise the 12(b)(6) argument in their ill-fated motion to transfer, stay, or dismiss [ECF Nos. 35, 44, 48]. *See* Fed. R. Civ. P. 12(g). Of course, the objection that a federal court lacks subject matter jurisdiction may be raised at any stage of the litigation. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006); *see* Fed. R. Civ. P. 12(h)(3). But, in granting

9

Defendants leave to brief the question of subject matter jurisdiction, the Court specifically warned defense counsel not to argue failure to state a claim [ECF No. 48 at 2]. Defense counsel ignored that warning, dressing up their 12(b)(6) argument in 12(b)(1) garb. The Court will not dismiss this entire case for lack of subject matter jurisdiction, since, in the light of the relevant case law, the argument that Plaintiff fails to allege any injury is borderline frivolous.

### B. Plaintiff Fails To Show by a Preponderance that Conopco and KKR Caused her Injury.

Defendants next ask the Court to dismiss the case against Conopco and KKR. Defendants argue that Plaintiff lacks standing to sue Conopco and KKR because Conopco and KKR could not have caused, and cannot redress, Plaintiff's alleged injury. Defendants submit evidence purporting to show that Conopco and KKR have never owned, or had any responsibility for, ICBINB Spray and that another entity has contractually assumed any liability for Plaintiff's claims. Despite a lack of assistance from defense counsel,[3] the Court finds that Plaintiff lacks standing to pursue her claims against Conopco and KKR.[4]

The Second Circuit has held that Article III requires a plaintiff to demonstrate that "she was injured by the conduct of each defendant." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d

---

[3] Defendants cite three inapposite cases to support the argument that the Court lacks subject matter jurisdiction because Conopco and KKR are the wrong defendants to sue. *See* Def. Mem. 7–8 (citing *Baldwin v. United States*, 2021 WL 431145, at *2–3 (N.D.N.Y. Feb. 8, 2021); *Thomas v. Dep't of Veterans Affairs*, 2006 WL 1636738, at *5 (S.D.N.Y. Apr. 3, 2006), report and recommendation adopted, 2006 WL 1594481; *Marshall v. National Association of Letter Carriers Br. 36 et al.*, 2003 WL 223563, at *7 (S.D.N.Y. Feb. 3, 2003)). Defendants describe these cases as "dismissing claims against improperly named defendant for lack of subject matter jurisdiction." Def. Mem. at 7–8. However, the courts in these cases dismissed for subject matter jurisdiction based on the doctrine of sovereign immunity. Defendants do not cite a single case, in either of their briefs, that supports their argument.

[4] Defendants' supposed redressability argument is unavailing. While attempting to maintain a thin veil of secrecy over the details, Defendants contend that Conopco and KKR cannot redress Plaintiff's alleged injury because, under the Contribution Agreement, another entity assumed liability for Plaintiff's claims. *See* Def. Mem. at 7. This argument has nothing to do with Plaintiff's standing. To establish standing, a plaintiff must show that her injury is likely to be redressed by a favorable decision. *See Nicosia*, 834 F.3d at 239. There is no question that Plaintiff's alleged injury is redressable. Plaintiff is not required to show that any particular defendant will personally pay out damages to survive a 12(b)(1) motion.

Cir. 2012); *see id*. at 63, 66 (rejecting the idea that Article III "permits suits against non-injurious defendants"). This case is not on all fours with *Mahon*. In that case, the plaintiff lacked standing to sue certain defendants because she did not allege that those defendants injured her, or that she had "any dealings" with them, but only that they were "juridically linked" to the defendant that injured her. *Id.* at 60, 61. Here, Plaintiff does allege an injury by Conopco and KKR. Plaintiff alleges that she purchased ICBINB Spray because it was deceptively marketed as a diet food, that Conopco "marketed, sold, and distributed" ICBINB Spray, and that KKR later "purchased the ICBINB brand." Cmpl. ¶¶ 2, 3. However, Defendants dispute that Conopco and KKR have ever "had any responsibility" for ICBINB Spray. Def. Mem. at 1.

Thus, whether Plaintiff was injured by, or had any dealings with, Conopco and KKR is a disputed jurisdictional fact. The Court must, therefore, look to evidence outside the pleadings to decide whether Conopco and KKR have manufactured, owned, or otherwise been responsible for the marketing of ICBINB Spray during the alleged class period. *See Tandon*, 752 F.3d at 243 (a district court has an "obligation to decide" disputed issues of jurisdictional fact "by reference to evidence outside the pleadings"). Moreover, Plaintiff has the burden to establish the existence of jurisdiction by a preponderance of the evidence. *See id.*

As detailed above, the parties agree that Conopco is a wholly owned subsidiary of Unilever United States, Inc. *See* Schwartz Decl. ¶ 1; Cmpl. ¶ 3. There is no dispute that Unilever United States, Inc. owned ICBINB Spray at the beginning of the alleged class period. *See* Schwartz Decl. ¶¶ 1, 4. Defendants assert in their brief, however, that Conopco "never owned" or had any responsibility for ICBINB Spray. Def. Mem. at 6. The evidence Defendants submitted does not prove that assertion, but it does raise a dispute.

11

The Schwartz declaration states that Conopco "does not" *presently* own and "is not" *presently* responsible for ICBINB Spray. Schwartz Decl. ¶ 3. After acknowledging that the alleged class period "dat[es] back to . . . 2014," the Schwartz declaration details a variety of business transactions involving ICBINB Spray that began in April 2015. *See* Schwartz Decl. ¶¶ 2, 4. Defendants suggest only obliquely that Unilever United States, Inc. owned ICBINB Spray through one of its subsidiaries other than Conopco until April 2015. *See* Schwartz Decl. ¶ 6; Contribution Agreement; Def. Mem. at 5 n.3. Indeed, Defendants' evidence is, in some ways, more confusing than clarifying.

But Plaintiff has the burden. *See Tandon*, 752 F.3d at 243. Plaintiff did not respond to Defendants' motion to dismiss with any evidence of Conopco's involvement in marketing ICBINB Spray.[5] Rather, Plaintiff cites the allegations in her complaint and incorrectly asserts that the Court cannot consider the evidence that Defendants submitted. Pl. Opp. at 5, 6. As such, Plaintiff fails to demonstrate by a preponderance of the evidence that her injury was caused in any way by Conopco, as opposed to "some third party not before the court." *Rothstein v. UBS AG*, 708 F.3d 82, 88 (2d Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Plaintiff therefore lacks standing to sue Conopco.

Turning to KKR, Defendants submit evidence demonstrating that KKR is an "investment advisor" and that KKR did not purchase ICBINB Spray. *See* Lee Decl. ¶¶ 3, 5, 6. Rather, in 2018, funds managed by KKR invested in the purchase of ICBINB Spray and remain shareholders in Upfield B.V. *See* Lee Decl. ¶¶ 5, 6, 8. The standard for showing a causal relationship between the

---

[5] Plaintiff does assert in her opposition brief that Conopco "has been identified as an 'interested party' . . . in a separate lawsuit involving this Product, *see Pardini v. Unilever United States*, No. 13-cv-1675 SC, ECF No. 11." Pl. Opp. at 5. The Court reviewed this filing, which states that Conopco is a wholly owned subsidiary of Unilever United States, Inc., as well as that Conopco "wholly owns Unilever Supply Chain, Inc." These representations, standing alone, are not evidence of Conopco's involvement in marketing ICBINB Spray.

12

defendant's conduct and the plaintiff's injury is not high, and the "indirectness" of the relationship is "not necessarily fatal to standing." *Rothstein*, 708 F.3d at 88 (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 44–45 (1976)). But Plaintiff is not alleging, much less offering evidence, that KKR indirectly influenced the allegedly deceptive marketing of ICBINB Spray. Rather, she insists that KKR "admittedly purchased" and "continued selling the mislabeled product." Pl. Opp. at 5. But, based on the only evidence before the Court, KKR simply did not purchase or sell ICBINB Spray. In the absence of allegations that KKR otherwise, indirectly, caused Plaintiff's injury, the Court finds that Plaintiff lacks standing to sue KKR.

### C. The 2018 Change to the Label

Defendants argue that "Plaintiff lacks standing to pursue claims challenging any version of ICBINBS" she did not personally purchase. Def. Mem. at 8. Specifically, Plaintiff alleges that "until the mid-2018s" the label of ICBINB Spray "listed nutritional information for two different 'serving sizes': (1) one spray, or .02 grams, for 'Cooking Spray' and (2) five sprays[,] or 1 gram, for 'topping.'" Cmpl. ¶ 35; *see* Cmpl. ¶¶ 34, 116. The label represented that the product contained 0 calories and 0 fat for both serving sizes. *See* Cmpl. ¶¶ 34, 126. Since 2018, the ICBINB Spray label has used only one serving size, which states that ICBINB Spray contains 0 calories and 0 fat per one spray of the product. Cmpl. ¶ 116. Plaintiff alleges that the ICBINB Spray she purchased had "two serving sizes on the label." Cmpl. ¶ 126. Thus, Defendants argue that Plaintiff lacks standing to assert claims "challenging any version of ICBINBS that post-date this label change in 2018." Def. Mem. at 8.

To be sure, a plaintiff must demonstrate standing for each claim she seeks to press. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012). But Plaintiff does not seek to press separate claims challenging what Defendants term different "versions" of ICBINB Spray. Def. Mem. at 8.

Rather, Plaintiff seeks to bring a class action alleging that ICBINB Spray has been deceptively marketed during the class period, which she alleges spans from 2014 until the present. *See* Cmpl. ¶ 129. Defendants' argument belongs in an opposition to a motion for class certification, as a reason to conclude that Plaintiff does not meet the typicality and adequacy requirements of Rule 23(a), given the class period that she alleges. *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 159 & n.10 (2d Cir. 2012).

This is not a situation in which a plaintiff seeks to bring class claims about distinct "products that [she] did not buy," which serve different purposes, function differently, or contain different ingredients. *DiMuro v. Clinique Laboratories*, LLC, 572 F. App'x 27, 29 (2d Cir. 2014) (no standing to challenge different cosmetic products, with "different ingredients," in the same "Repairwear" product line); *see Hart v. BHH, LLC*, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016) (plaintiff who purchased "Pest Repellers," which are plugged into outlets and used to repel insects and mice, lacked standing to bring class claims about unpurchased solar-powered "Animal Repellers" used for racoons and deer). On the contrary, all parties agree that "[t]he only product at issue here is ICBINBS." Def. Mem. at 8; *accord* Pl. Opp. at 7.

The Court notes that, since the Second Circuit issued its unpublished decision in *DiMuro*, a number of district courts in this Circuit have concluded that a putative class-action plaintiff has standing, at the pleading stage, to assert claims about products she did not purchase only where two tests are met: (1) the unpurchased products are substantially similar to the product she did purchase; and (2) the alleged misrepresentation is the same. *Rivera v. S.C. Johnson & Son, Inc.*, No. 20-cv-3588 (RA), 2021 WL 4392300, at *9 (S.D.N.Y. Sept. 24, 2021) (collecting cases). These cases involve unpurchased products that are held out as distinct from the purchased product. *See id.* at 10 (ruling that plaintiffs who purchased "Windex Original Non-Toxic Formula," and

similar Windex products, had standing to assert class claims about the unpurchased "Multi-Surface Non-Toxic Formula"); *de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 335 (S.D.N.Y. 2021) (ruling that plaintiffs who purchased toothpaste advertised as "natural" had standing to assert class claims about unpurchased deodorant, even if the allegedly "unnatural" ingredients were different); *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 563 (S.D.N.Y. 2016).

Since Defendants concede there is "only [one] product at issue here," these tests likely do not apply to this case. Def. Mem. at 8. Even so, the Court concludes that both tests are met. With respect to the first test, there is no allegation that the product, itself, is different in any way. Only the label changed. With respect to the second test, the essential "alleged misrepresentation" is that ICBINB Spray deceptively markets itself as a diet food, even though, in reality, it is an ordinary margarine. *Rivera*, 2021 WL 4392300, at *9; *see* Cmpl. ¶¶ 25, 44. In particular, Plaintiff alleges that the label of ICBINB Spray is misleading because it uses an "unrealistically small serving size." Cmpl. ¶ 44; *accord* Cmpl. ¶ 59. These alleged misrepresentations still apply after the 2018 change to the label, which now states that the product contains 0 calories and 0 fat per one spray of the product. *See* Cmpl. ¶ 116

It is true that, in one paragraph of the complaint, Plaintiff specifically alleges that the use of two different serving sizes on the label, "both listed as 0 calories and 0 fat," led her to believe ICBINB Spray "was inherently free" of fat and calories. Cmpl. ¶ 126; *see also* Cmpl. ¶ 57. Again, Defendants can argue on a Rule 23 motion that Plaintiff does not adequately represent putative class members who never saw a label with two different serving sizes. But the complaint alleges that ICBINB Spray has been deceptively marketed as a diet food in numerous ways, including: the "name of the product itself," Cmpl. ¶ 24; the website in 2019 proclaiming that the product's "Unbelievable Benefits" include "0 calories per serving" and "0g fat per serving," Cmpl. ¶ 39; and

15

various celebrity advertising campaigns over the years, Cmpl. ¶¶ 17–21. Defendants do not contend that Plaintiff would lack standing to bring claims about the product during the period of the Eva Longoria advertising campaign if Plaintiff had purchased ICBINB Spray when Fabio was the spokesman. *See* Cmpl. ¶¶ 18, 21. As the Second Circuit has explained, "it rarely happens that the circumstances surrounding one plaintiff's claim end up being identical to the claims of another putative class member, let alone all of the others." *Langan v. Johnson & Johnson Consumer Companies, Inc.*, 897 F.3d 88, 94 (2d Cir. 2018). The 2018 change to the label of ICBINB Spray does not deprive Plaintiff of standing to pursue any of her claims.

### D. Claims Under the Laws of States Other than New York

Defendants next argue that Plaintiff lacks standing to assert claims based on the laws of states other than New York, since "Plaintiff is a New York citizen who allegedly purchased ICBINBS in New York." Def. Mem. at 9; *cf.* Cmpl. ¶ 122. But Defendants, yet again, misuse their motion to dismiss for lack of subject matter jurisdiction. The Second Circuit has expressly held that "whether a plaintiff can bring a class action under the state laws of multiple states is a question of predominance under Rule 23(b)(3), not a question of standing under Article III." *Langan*, 897 F.3d at 96. Notwithstanding a feeble effort to distinguish *Langan*, in their reply brief, Defendants obviously cannot prevail on an argument that flies in the face of binding Second Circuit precedent. *See* Reply at 5 n.9.

### E. Plaintiff Lacks Standing To Seek Injunctive Relief.

Finally, Defendants argue that Plaintiff lacks standing to seek injunctive relief. Def. Mem. at 9–10. Plaintiff conceded Defendants' argument by failing to oppose it in her brief. *See Tarrant v. City of Mount Vernon*, 2021 WL 5647820, at *5 (S.D.N.Y. Dec. 1, 2021). In any event, the Court agrees that Plaintiff lacks standing to seek injunctive relief.

In *Nicosia v. Amazon.com, Inc.*, the Second Circuit held that the plaintiff in a putative class action lacked standing to seek injunctive relief because he failed to "establish a likelihood of future or continuing harm." *Nicosia*, 834 F.3d at 239. The same is true here. Plaintiff does not allege that she has any intention of purchasing ICBINB Spray in the future. And because she does not personally have standing to seek injunctive relief, she also lacks standing to seek injunctive relief on behalf of a putative class. *See id.*

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED IN PART and GRANTED IN PART. The request to dismiss the entire case for lack of standing is DENIED. The request to dismiss the case as to Defendants Conopco and KKR is GRANTED. The request to dismiss Plaintiff's claims insofar as they involve the product after the 2018 change to the label of ICBINB Spray is DENIED without prejudice. The request to dismiss the claims under the laws of states other than New York is DENIED without prejudice. The request to dismiss the claims for injunctive relief is GRANTED.

By March 2, 2023, Defendants must: (1) file an answer; (2) refile the documents at docket entries 51 and 52 with fewer redactions; and (3) file a letter justifying those redactions. By March 16, 2023, the parties shall file a joint letter and proposed Case Management Plan, in accordance with the Court's Individual Rules.

The Clerk of Court respectfully is requested to terminate the motion pending at docket entry 50.

**SO ORDERED.**

Date: February 16, 2023
New York, NY

MARY KAY VYSKOCIL
United States District Judge